**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DANI HOURANI, # 17832-039,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | Case No. 18-cv-152-SMY |
| ) | |
| **T.G WERLICH,** ) | |
| ) | |
| **Respondent.** ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Petitioner Dani Hourani is incarcerated at the FCI-Greenville, Illinois ("Greenville"). He filed this habeas corpus action pursuant to 28 U.S.C. § 2241 to challenge his conviction and sentence for conspiring to murder a federal witness in violation of 18 U.S.C. § 371 and § 1512, and aiding and abetting the killing of another person with the intent to prevent the person from communication with law enforcement or from testifying, in violation of 18 U.S.C. § 1512(a) and § 2. (Doc. 1, p. 2). He is serving a life sentence for the § 1512(a) conviction and a concurrent five-year term for the § 371 conviction. Petitioner argues that after *Rosemond v. United States*, 572 U.S. 65 (2014), and *Fowler v. United States*, 563 U.S. 668 (2011), he is actually innocent of both crimes.

Upon initial review, this Court determined that Petitioner's *Rosemond* claim could not be brought in a § 2241 petition because he was not convicted of a violation of 18 U.S.C. § 924(c) or of aiding or abetting the same.[1] (Doc. 5, p. 4); *Nix v. Daniels*, No. 16-2605, 2016 WL 9406711

---

[1] *Rosemond*, a statutory interpretation case which the Seventh Circuit has applied retroactively on collateral review, "clarified the interplay between aiding-and-abetting liability under 18 U.S.C. § 2 and the substantive firearms offense in 18 U.S.C. § 924(c)," requiring the jury to find that a defendant had actual

1

(7th Cir. 2016) (affirming dismissal of § 2241 petition raising *Rosemond* because petitioner was not charged "with any type of § 924(c) offense"). Respondent was ordered to answer Petitioner's claim that the jury instructions at his trial were erroneous under *Fowler*. (Doc. 5, pp. 4-6).

Respondent argues that Petitioner procedurally defaulted his *Fowler* claim, that *Fowler* did not change the intent requirement as relevant to this case, that Petitioner cannot demonstrate his actual innocence, and that the failure to instruct the jury in compliance with *Fowler* was harmless. (Doc. 19). Petitioner replied, submitting extensive transcript material. (Docs. 33, 41). For the following reasons, the Habeas Petition will be **DENIED**.

## Relevant Facts and Procedural History

Petitioner Dani Hourani was convicted by a jury in the Eastern District of Michigan in and was sentenced to life imprisonment in 1996. *United States v. Hourani, et al.*, Case No. 95-cr-80071-BAF-2 (E.D. Mich.). He had been involved in a heroin trafficking operation led by his father (Ibrahim Hourani, referred to herein as "Ibrahim") and Abbas Aldirani. (Doc. 19, p. 3). The FBI began investigating these activities in 1992 and enlisted Hassan Cheaib as a cooperating witness to make controlled drug transactions with Ibrahim. Cheaib and Ibrahim were arrested and Ibrahim later learned that Cheaib was a cooperator and shared this information with Aldirani and Petitioner. Petitioner made threats on Cheaib's life and enlisted drug customer Haidar Rahal to find someone who could kill Cheaib. (Doc. 1, p. 12; Doc. 19, p. 4). Another drug customer introduced Rahal to Tony "Mobeen" (or "Mobean") Owens,[2] who agreed to do the killing. *Id.* On

---

advance knowledge that his cohort would use a firearm in the underlying offense. *Montana v. Cross*, 829 F.3d 775, 777-78, 783 (7th Cir. 2016).

[2] This individual's nickname is spelled both ways in documents filed in this case. (Doc. 1, p. 12; Doc. 19, p. 4; Doc. 19-6, p. 5).

December 2, 1992, Petitioner saw Cheaib with a friend, Mohamed "Booty" Biri.[3] Petitioner notified Rahal and gave Cheaib's location to Owens. (Doc. 19-4, pp. 25-30). Owens shot Biri while attempting to shoot Cheaib. Biri died of three gunshot wounds while Cheaib escaped injury. (Doc. 1, pp. 12-13; Doc. 19, pp. 4-5). Petitioner admitted to Aldirani that he was responsible for the shooting. His life sentence under § 1512(a) was imposed for Biri's death.

The Sixth Circuit Court of Appeals affirmed Petitioner's conviction. *United States v. Hourani*, 172 F.3d 50 (6th Cir. 1999) (table), 1999 WL 16472. His collateral attack under 28 U.S.C. § 2255 was denied and the denial was affirmed by the Sixth Circuit in January 2002. (Doc. 1, p. 2; Doc. 19, pp. 5-6). Petitioner filed a motion in 2003 invoking Federal Rule of Civil Procedure 60(b) that was rejected as an unauthorized successive § 2255 motion. (Doc. 1, pp. 2-3).

## **Applicable Law**

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be employed to raise claims of legal error in conviction or sentencing; they may only challenge the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Thus, aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. *See Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). Additionally, he may not file a "second or successive" § 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the

---

[3] This is the spelling of the victim's name as it appears in the trial transcript and used by Petitioner. (Doc. 1, pp. 10, 12, 16-18; Doc. 19-1, p. 29; Doc. 19-2, pp. 28, 37). Respondent's pleadings use alternative spellings: Mohamed "Boudie" Berri, and "Boudi." (Doc. 19, pp. 4-5, 7).

movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Under very limited circumstances, a prisoner may challenge his federal conviction or sentence under § 2241. 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998).[4]

Following *Davenport* and its progeny, the Seventh Circuit has enunciated a three-part test for determining whether § 2255 is inadequate or ineffective, thus triggering the savings clause:

> (1): the federal prisoner must seek relief based on a decision of statutory interpretation (as opposed to a decision of constitutional interpretation, which the inmate could raise in a second or successive § 2255 motion);
>
> (2): the statutory rule of law in question must apply retroactively to cases on collateral review *and* could not have been invoked in a first § 2255 motion; and
>
> (3): a failure to afford the prisoner collateral relief would amount to an error "grave enough" to constitute "a miscarriage of justice."

*Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020) (emphasis in original) (citing *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016); *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019)). *See also Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). Thus, "there must be some kind of structural problem with section 2255

---

[4] The Seventh Circuit's interpretation of § 2255(e)'s savings clause is in line with a majority of the Circuit Courts of Appeals' jurisprudence on this issue, and aligns with that of the Sixth Circuit, where Petitioner was convicted. *See, e.g.*, *Wright v. Spaulding*, 939 F.3d 695, 699 (6th Cir. 2019) (collecting cases); *Martin v. Perez*, 319 F.3d 799 (6th Cir. 2003).

before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

## Discussion

Petitioner was convicted of aiding and abetting the killing of Biri under 18 U.S.C. § 1512(a)(1) (1995), which provides in relevant part:

> (a)(1) Whoever kills or attempts to kill another person, with intent to-- . . .
>
>> (C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
>
> shall be punished as provided in paragraph (2).[5]

And, pursuant to the aiding and abetting statute:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C.A. § 2.

In *Fowler*, the Supreme Court addressed the concern that a purely state crime could be elevated to a federal witness tampering offense by a mere remote or hypothetical possibility that the victim might have communicated with a federal officer. *Fowler* at 677-78. In reversing the conviction of a defendant who killed a local police officer, the Court held that in order to prove the required intent for a violation of 18 U.S.C. § 1512(a)(1)(C), the Government must establish a

---

[5] Section 1512(a)(2) provides that in the case of murder, the punishment may be death or life imprisonment, and an attempt carries a sentence of up to 20 years. 18 U.S.C. § 1512(a)(2) (1995).

5

reasonable likelihood that if the victim had communicated with law enforcement, a relevant communication would have been made to a federal officer. *Id.*

Citing *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) and *Fowler*, 563 U.S. at 673, Petitioner contends that *Fowler* represents a substantive change in decisional law that has retroactive application and that stands "for the proposition that § 1512 only applies to the killing of an actual informant or witness and not to any unforeseen or unintended collateral consequences" such as the killing of a bystander who would not have been a prospective federal informant. (Doc. 1, pp. 15-16). Thus, he argues that because Biri was a bystander whose death was unforeseen and unintended, he could not have formed the requisite intent to kill him, and as such, Biri's murder fell outside the scope of § 1512. He also argues that because the evidence showed only that he attempted to kill Cheaib (the actual federal informant), that attempt carries only a 20-year sentence under § 1512(a)(2)(B).

Assuming for the sake of the Court's analysis that Petitioner's interpretation is correct, his reliance on *Fowler*, a statutory interpretation case, would satisfy the first and second savings clause conditions. However, the "miscarriage of justice" element is lacking. *Fowler* does not address the intent requirement under 18 U.S.C. § 1512(a)(1)(C) as it may relate to the killing of a bystander who was never the intended victim. Nor does *Fowler* alter the analysis regarding culpability for aiding or abetting a federal offense.

Petitioner states the obvious – he could not have formed the requisite intent under § 1512(a)(1)(C) to kill Biri in order to prevent his communication with a federal officer, because Biri was a bystander and he did not want him to be killed. But Biri's murder cannot be viewed in isolation as Petitioner would have the Court do. Biri's death was a direct result of Petitioner's efforts to kill Cheaib, who was a federal informant in the investigation and planned prosecution of

6

those conducting the drug trafficking operation in which Petitioner was involved. The relevant intent is that of Petitioner toward Cheaib, the intended target of the hit.

Petitioner's challenge to his aiding and abetting conviction reiterates the issues he raised on direct appeal. *United States v. Hourani*, 172 F.3d 50 (1999) (table), 1999 WL 16472, *3-4. There, he argued that the shooter lacked the required intent under § 1512 to kill a person in order to prevent a communication with law enforcement, and challenged the use of 18 U.S.C. § 2(b) to transfer his intent to kill Cheaib to the shooter. The appellate court rejected those arguments, concluding that the transferred intent provision in § 2(b) is implicit in § 2(a), and the charge that he "did knowingly and intentionally cause the killing of another person [Mohamed Biri] … with intent to prevent [Hassan Cheaib] … from communicating to a law enforcement officer … and to prevent the attendance and testimony [of Hassan Cheaib] in an official proceeding" clearly fell within § 2(b). *Hourani*, 1999 WL 16472, at *4; (Doc. 33-1, p. 127 (Count 2 of Indictment)). The court also found that the jury instructions adequately informed the jury of the law by extensively explaining aiding and abetting liability and specifying Petitioner's required intent: "What the government must prove is the defendant did something to help or encourage the crime with the intent that the crime be committed." *Hourani*, 1999 WL 16472, at *4; (See Doc. 19-7, pp. 2-10). That instruction conformed with the requirements of § 2(b) to transfer Petitioner's intent to the shooter. *Id.*; *see also United States v. Newman*, 755 F.3d 543, 546 (7th Cir.) *cert. denied*, 574 U.S. 967 (2014) ("A person who aids or abets the commission of a crime is liable as a principal. 18 U.S.C. § 2. And an indictment need not charge the § 2 offense separately. Aiding or abetting is a proper basis of conviction in every prosecution.").

The appellate court's ruling makes clear that Petitioner's intent to have Cheaib killed and thereby stop him from communicating with federal officers was the relevant factor supporting his

7

conviction for aiding and abetting the killing of Biri as a crime punishable under § 1512(a). It did not matter on direct appeal that neither Petitioner nor the shooter intended to kill Biri, and it does not matter in this case. The holding in *Fowler* did not change the requirements for an aiding/abetting conviction or affect the principle of transferred intent; it reversed a conviction because the federal connection was not proven. Conversely, the evidence in Petitioner's case clearly established that the intended target was in communication with federal officers about a federal crime. As such, the Supreme Court's findings and conclusions in *Fowler* do not suggest that Petitioner has been imprisoned for a nonexistent offense or that his conviction was a miscarriage of justice.

For the foregoing reasons, Petitioner's claim does not fall within the scope of the savings clause of 28 U.S.C. § 2255(e) and he is not entitled to relief under § 2241.[6]

## Disposition

Dani Hourani's Petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**; all pending motions are **DENIED AS MOOT**; and this case is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to close this case and enter judgment accordingly.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 Petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000). If Petitioner wishes to appeal, he may file a notice of appeal with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B)(iii). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be

---

[6] In light of this conclusion, the Court finds it unnecessary to address Respondent's argument that Petitioner procedurally defaulted his claim. Nor does the Court reach Petitioner's arguments about evidence he claims demonstrates his actual innocence because *Fowler* does not open the door for him to seek relief under § 2241.

extended.

A motion for leave to appeal *in forma pauperis* must identify the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED: August 10, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**